UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMBER ANNE MAKELKE,

          Plaintiff,

       v.                                        **DECISION AND ORDER**
                                                               16-CV-977S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

       1.      Plaintiff Amber Makelke challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since May 3, 2009, due to agoraphobia, anxiety disorder, depression, borderline personality disorder, ADHD, and migraines. Plaintiff contends that her impairments render her unable to work, and thus, she is entitled to disability benefits under the Act.

       2.      Plaintiff concurrently filed an application for child's insurance benefits based on disability and a Title XVI application for supplemental security income on May 15, 2013. Both were denied on September 6, 2013. Plaintiff thereafter requested a hearing before an ALJ on October 3, 2013. On June 1, 2015, ALJ Stephen Cordovani held a hearing at which Plaintiff appeared with counsel and testified. Vocational Expert ("VE") David A. Festa also testified. At the time of the hearing, Plaintiff was 28 years old. Plaintiff had completed two years of college education and she reported specialized training in asbestos removal and cosmetology. She reported past work experience as a physical therapy aide, cocktail waitress, laborer, and retail clerk. The ALJ considered the case *de novo* and, on September 2, 2015, issued a written decision denying Plaintiff's application

1

for benefits. The Appeals Council denied Plaintiff's request for review on October 21, 2016. Plaintiff filed the current action on December 6, 2016, challenging the Commissioner's final decision.[1]

3. On June 2, 2017, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 11). On August 1, 2017, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 13). Plaintiff filed a reply on August 22, 2017 (Docket No. 14), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is granted, Defendant's motion is denied, and this case is remanded.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[1] The ALJ's September 2, 2015 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant

> has such an impairment, the [Commissioner] will consider her
> disabled without considering vocational factors such as age,
> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, she has the residual functional capacity to
> perform her past work. Finally, if the claimant is unable to
> perform her past work, the [Commissioner] then determines
> whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since May 3, 2009, the alleged onset date (R. at 23);[2] (2) Plaintiff has not been under a disability, as defined by the Act, at any time before the date she attained age 22 (R. at 25); (3) Anxiety disorder, affective disorder, personality disorder, and migraines are severe

---
[2] Citations to the underlying administrative record are designated as "R."

4

impairments within the meaning of the Act (R. at 25); (4) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 25), and Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work as defined in 20 C.F.R. 404.1567(c) and 416(c), with certain exceptions[3] (R. at 27-30); (5) Plaintiff has no past relevant work (R. at 30); and (6) Plaintiff can perform jobs that exist in significant numbers in the national economy (R. at 31-32). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act during the relevant period—May 3, 2009, through September 2, 2015. (R. at 32).

10. Plaintiff contends that the ALJ erred by failing to properly evaluate her migraines, which resulted in a finding not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ failed to account for her migraines in formulating her RFC, despite finding her migraines to be a severe impairment at Step 2. In response, Defendant maintains that the ALJ properly assessed Plaintiff's headaches and reasonably found that they did not require a limitation in her RFC. Defendant also argues that Plaintiff failed to demonstrate any significant work-related limitations caused by her migraine headaches, as was her burden.

11. The medical records reveal that Plaintiff reported suffering from migraines when she met with Dr. Charles King of the Genesee Council on Alcoholism and Substance Abuse on September 13, 2010, to discuss medications for ADHD. (R. at 424.) Plaintiff reported experiencing migraine headaches "at least three times per week" that

---

[3] The ALJ found that Plaintiff retained the RFC for full work at all exertional levels, except that she must work in a low-stress environment with frequent interaction with supervisors and no or only incidental interaction with co-workers and the general public. (R. at 27).

she treated with over-the-counter medication and caffeine. (R. at 425.) Dr. King prescribed Topomax, which Plaintiff had been prescribed in the past to treat her ADHD. (R. at 424, 425.) At a follow-up appointment on October 11, 2010, Plaintiff reported no side effects from the Topomax and indicated that it had reduced her migraines to only one per week. (R. at 427.) Dr. King increased her dosage and also prescribed Naproxyn to treat Plaintiff's "breakthrough" headaches. (Id.) At a further follow up on November 24, 2010, Plaintiff reported that the Topomax "is greatly helping her headaches" and that she had not had any headaches since increasing her Topomax dosage on October 11, 2010. (R. at 428.)

12. Plaintiff continued to be prescribed Topomax for migraines through January 18, 2012, while being treated at Spectrum Human Services. (R. at 306, 334-345.) At some point, Plaintiff stopped taking Topomax because she was unable to find a primary physician who would prescribe it. (R. at 390.) But once she began receiving care through Horizon Health, she requested to go back on Topamax on February 1, 2013, to help stabilize her mood and prevent her migraine headaches, which the providers deemed a reasonable request. (Id.) Plaintiff was then prescribed 50 mg Topamax. (Id.) When Plaintiff later saw Dr. Janine Ippolito for a psychiatric evaluation on August 15, 2013, she noted that Plaintiff's current medications included Topamax and that Plaintiff's "chronic and current medical conditions" included migraines. (R. at 430.)

13. On November 29, 2013, an MRI of Plaintiff's brain confirmed that she suffers from a condition consistent with migraines, with findings including that "the brain parenchyma demonstrates rare scattered punctate foci of bright T2 signal in the subcortical white matter," which the radiologist opined are findings described in patients

with chronic headaches. (R. at 441.) Erie County Medical Center records indicate that Plaintiff ran out of Topomax in January 2014 and reported that it was "hard to function with a headache." (R. at 465.) In September 2014, Plaintiff reported to doctors at Erie County Medical Center that "she continues to experience shock like experiences from the inside of her head." (R. at 482.) Other than the several incidents when she ran out of the medication, it appears that Plaintiff remained on Topamax from September 2010 through January 2015 to treat her headaches. (R. at 424, 500.)

14. In addition to the information in the treatment notes discussed above, Plaintiff testified about her headaches at the hearing before the ALJ. She stated that she had been experiencing headaches since she was 17 or 18 years old. (R. at 57.) She described her migraines as regular headaches that progressively get worse over an hour. (R. at 57.) She testified that taking Topomax reduces the frequency of her headaches from three to five per week down to one or two per week. (R. at 57-58, 59.) When asked to describe what happens when she experiences a migraine, Plaintiff testified that "I just can't leave the bathroom. I can't even keep down water. I can't see, I can't open my eyes. I just stay in the bathtub try to sleep in there and throw up in the garbage can." (R. at 57, 62.) Plaintiff represented that she had last experienced a migraine about 10 days before the hearing, at which time she "sat in the bathtub and threw up until it was over." (R. at 65-66.) She indicated that her primary care physician treats her headaches with Topamax, which she takes twice daily. (R. at 65.) She further stated that her doctors know that her headaches result in vomiting, which they told her was "part of it." (R. at 66.)

7

15.     The ALJ found at Step 2 that Plaintiff's migraine condition was a severe impairment. (R. at 25.) That is, one that has "more than a minimal effect" on Plaintiff's ability to work. (Id.) Defendant argues that the ALJ did not find Plaintiff's migraine condition to be a singular severe impairment, but rather, found that her multiple conditions taken in combination constituted a severe impairment. This is not borne out in the decision, which specifically identifies four conditions that the ALJ found to be severe impairments. (Id.) Nowhere does the ALJ state that his finding of a severe impairment is based on a combination of conditions.

16.     The ALJ next considered whether Plaintiff's migraine condition met Listing 11.00 and found that it did not. (Id.) Moving to Steps 4 and 5, the ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with non-exertional limitations including low-stress work environment, frequent interaction with supervisors, and no or only incidental interaction with co-workers and the general public. (R. at 27.) In reaching this determination, the ALJ considered the medical evidence and Plaintiff's testimony concerning her migraines. (R. at 27-29.) While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he nonetheless found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms was not entirely credible. (R. at 29.) In relation to Plaintiff's headaches, the ALJ discredited her testimony because he found that "there is no documented treatment or medical response at present that seems to reflect that type of problem." (R. at 30.)

17.     The ALJ's consideration of Plaintiff's migraine condition requires remand. First, when recounting the medical evidence at Steps 4 and 5, the ALJ failed to consider

or discuss the continuous treatment that Plaintiff received for her migraines, as set forth above. Second, contrary to the ALJ's finding that "there is no documented treatment or medical response at present that seems to reflect [a headache condition]," the record is replete with references to Plaintiff continually seeking and receiving treatment for migraines from multiple providers, most of whom prescribed Topomax. The record also contains objective evidence of Plaintiff's headache condition: the MRI of her brain, which revealed a condition consistent with headaches. While the ALJ notes the existence of the MRI results in the record, he does not appear to consider them or recognize that they support the existence of a headache condition. Third, the ALJ fails to explain how the activities of daily living that he cites—taking care of two young children; driving children to school; taking care of a dog—are inconsistent with the severe migraine condition Plaintiff described. Finally, after finding Plaintiff's migraine condition to be severe at Step 2, the ALJ fails to explain why such a condition does not warrant a limitation in the RFC. No explanation is provided for how Plaintiff's migraine condition— which occurred at least once or twice per week and resulted in debilitating symptoms including vomiting—would not limit her ability to work or warrant a functional limitation in her RFC. See, e.g., Johnson v. Comm'r of Soc. Sec., No. 2:13-CV-217, 2014 WL 2118444, at *5 (D.Vt. May 21, 2014) ("By finding that Johnson's migraines constituted a severe impairment, the ALJ implicitly found that the impairment 'significantly limit[ed] [Johnson's] . . . ability to do basic work-related activities.'") (quoting 20 C.F.R. § 404.1521 (a)). In light of these errors, this Court finds that the ALJ's conclusions concerning Plaintiff's headaches are not supported by substantial evidence and must be revisited. Remand is thus required for proper consideration of Plaintiff's migraine condition.

18. After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      August 27, 2018
               Buffalo, New York


                                                /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                United States District Judge